THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWIN EKONG, Defendant-Appellant.
Third District   No. 3—91—0216

Opinion filed November 19, 1991.

James D. Montgomery, of James D. Montgomery & Associates, Ltd., of Chicago (Mary Elise Walden, of counsel), for appellant.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Bradley P. Halloran and Terence M. Madsen, Assistant Attorneys General, of Chicago, of counsel), for the People.

PRESIDING JUSTICE STOUDER delivered the opinion of the court:

The defendant, Dr. Edwin Ekong, was held in contempt of court for failing to comply with a subpoena *duces tecum* issued by a Kankakee County grand jury. The court ordered the defendant incarcerated until he purged himself of contempt. The defendant was subsequently released on bond pending this appeal.

On January 16, 1991, Special Agent Jim Terry of the Illinois State Police, Assistant Attorney General Pat Jennings and other police officers searched the defendant's office pursuant to a search warrant and removed all current and past billing records for a five-year period which related to both medicaid and nonmedicaid patients. The defendant was served with a grand jury subpoena *duces tecum* commanding him to bring to the grand jury on January 25, 1991, all patient files, records and sign-in sheets of medicaid patients treated by him or otherwise treated at the medical clinic during the period of January 1, 1986, through January 15, 1991. The grand jury was investigating possible medicaid fraud on the part of the defendant.

On February 8, 1991, the defendant presented a motion to quash the subpoena, which requested the return of his patient files and the other items seized. The trial court denied the motion and found that the defendant must comply with the subpoena to the extent of turning over approximately 1,000 patient files to the grand jury.

The defendant asserted the statutory physician-patient privilege (Ill. Rev. Stat. 1989, ch. 110, par. 8—802) (privilege) as a basis for refusing to comply with the subpoena. The trial court found the privilege to be in conflict with Federal law. The court found that the purpose of the Federal legislation (the prevention of medicaid fraud) would be thwarted by enforcement of the privilege under these circumstances. Therefore, under the supremacy clause of the United States Constitution, article VI, the privilege fell and the court ordered the defendant to comply with the subpoena.

The defendant claims the privilege exempts him from releasing the requested information to the grand jury. Although no similar privilege existed at common law, the physician-patient privilege provides that no physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve such patient. (Ill. Rev. Stat. 1989, ch. 110, par. 8—802.) A number of exceptions are listed within the statute; however, none applies in the instant case.

■■ We must address whether the privilege can prevent the subpoenaing of a physician's records of patient treatment during an investigation of alleged medicaid fraud in which applicable Federal law requires disclosure. We hold that under the supremacy clause, Federal law prevails and that the medical records in the defendant's possession are obtainable by the grand jury.

When confronted with a situation wherein a State law conflicts with Federal law, the United States Supreme Court has stated that we must "determine whether under the circumstances of this particular case [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." (*Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 51 L. Ed. 2d 604, 97 S. Ct. 1305.) This inquiry requires that we consider the relationship between State and Federal laws as they are interpreted and applied, not merely as they are written. (*Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 51 L. Ed. 2d 604, 97 S. Ct. 1305.) When the State law prevents the accomplishment of the full congressional purpose, it must yield to the Federal law. *Jones v. Rath Packing Co.* (1977), 430 U.S. 519, 51 L. Ed. 2d 604, 97 S. Ct. 1305.

A review of the Federal medicaid laws and regulations discloses a clear congressional intention that the patient records kept by health-care providers be subject to disclosure during fraud investigations. (See *In re Grand Jury Investigation* (R.I. 1982), 441 A.2d 525.) The regulations set forth State plan requirements, standards,

procedures, and conditions for obtaining Federal funds. (42 C.F.R. §430.0(b)(1) (1991).) One requirement is that the disclosure of patient records be for "[c]onducting or assisting an investigation, prosecution, or civil or criminal proceeding." 42 C.F.R. §431.302 (1991).

Regarding criminal investigations, Federal law provides for the creation of a State medicaid fraud-control unit to protect the program from fraudulent practices. (42 U.S.C.A. §1396b(q) (West Supp. 1981).) This section provides *inter alia* that the fraud-control unit is to: (1) possess statewide authority to prosecute individuals for criminal violations; (2) remain separate and distinct from the State agency; (3) investigate and prosecute all aspects of fraud in connection with the medicaid program; (4) act upon complaints of patient abuse or neglect under the criminal laws of the State; and (5) employ the necessary personnel and be organized in such a manner as will promote effectiveness and efficiency. 42 U.S.C. §1396b(q) (1988).

These statutory requirements are expanded upon in the regulations. Section 455.21(a)(2) of the Code of Federal Regulations provides in part that when a fraud-control unit determines that patient records may be useful in investigations of suspected fraud, it shall have:

"[a]ccess to any information kept by providers to which the agency is authorized access ***. In using this information, the unit must protect the privacy rights of recipients." 42 C.F.R. §455.21(a)(2)(iii) (1991).

Furthermore, a State plan must provide for an agreement between the medicaid agency and each provider furnishing services under the plan (including individual practitioners), in which agreement the provider agrees to:

"(1) Keep any records necessary to disclose the extent of services the provider furnishes to recipients; [and]

(2) On requests, furnish to the Medicaid agency, the Secretary, or the State Medicaid fraud control unit *** any information maintained under paragraph (b)(1) of this section and any information regarding payments claimed by the provider for furnishing services under the plan ***." 42 C.F.R. §431.107 (1991).

In addition, we find the trial court correctly adopted the findings of the Rhode Island Supreme Court case *In re Grand Jury Investigation* (R.I. 1982), 441 A.2d 525. In that case, the court found a similar physician-patient privilege statute to be inapplicable dur-

ing an investigation of alleged medicaid fraud in which pertinent Federal law requires disclosure. (*In re Grand Jury Investigation* (1982), 441 A.2d 525.) As a result, the grand jury was entitled to obtain the medicaid records of certain patients of two physicians. The court concluded:

"The federal policy requiring disclosure of patient records for fraud investigations is very necessary to the continued viability of the Medicaid program. The statutorily created physician-patient privilege stands as an obstacle to the accomplishment and execution of this purpose. [Citation.] By giving priority to the privilege, we would be keeping what might be the most persuasive evidence of criminal activity from the fraud control unit and the grand jury." *In re Grand Jury Investigation* (1982), 441 A.2d 525, 531.

It is clear from the Federal statutes and regulations that the disclosure of patient records for medicaid fraud investigations is one of the requirements that a State must comply with to continue to receive Federal medicaid funds. And, it is the stated purpose of our legislature to be in full compliance with Federal law to ensure continued Federal funding. (See Ill. Rev. Stat. 1989, ch. 23, par. 5—5.) In that regard, Illinois has a medicaid fraud-control unit operating within the office of the Attorney General. In the instant case, that unit was conducting a fraud investigation of the defendant. The fraud-control unit determined that certain patient records were necessary to conduct the investigation. The grand jurors agreed with this assessment.

The Federal medicaid laws speak in terms of disclosing the records to the fraud-control unit, and in the instant case the records are sought to be disclosed to the grand jury. The traditional function of the grand jury in investigating alleged violations of the criminal law is well established in our system of law enforcement. Under these circumstances, therefore, we conclude that the Federal medicaid laws anticipated the employment of usual State process and procedure in conducting these investigations.

Accordingly, we find the trial court did not err in denying the defendant's motion to quash the subpoena *duces tecum*.

■ Finally, we find no merit in the defendant's assertion that he was entitled to compensation for the reproduction of the requested documents. The defendant, relying on a section of the enforcement regulations of the Illinois Department of Public Aid, argues that the State must compensate him for the photocopies taken by the medicaid fraud unit agents. The section defendant refers to

provides in part that Department personnel shall make all attempts to examine such records without interfering with the professional activities of the provider. In the instant case, however, that section in no way relates to whether the State is obliged to compensate the defendant for the photocopies of his records.

In any case, the defendant cites Federal Rule of Criminal Procedure 17(c) in support of his assertion that the court can order the State to pay for the cost of compliance with the subpoena. We note that a Federal appeals court interpreting Rule 17(c) in circumstances similar to the instant case held:

"As a general rule, a witness or the recipient of a *subpoena duces tecum* is required to bear the cost of compliance. *** Rule 17(c)'s provision that the court may quash a *subpoena* 'if compliance would be unreasonable or oppressive' must be read to mean that the main run of cases the costs of compliance will be assumed as part of the public duty of providing evidence." (Emphasis added.) *Second National Bank of North Miami v. United States* (1977), 555 F.2d 1306, 1308.

In the instant case, the defendant is not entitled to be compensated for the photocopies of his records. We appreciate that in the course of investigating the defendant's medical practice, the medicaid fraud-control unit was authorized to remove many volumes of the defendant's files and that reproducing those files would entail certain costs for the defendant. In the instant case, however, we cannot find compliance with the subpoena oppressive due to the magnitude of the defendant's medical practice.

For these reasons, we affirm the judgment of the circuit court of Kankakee County.

Affirmed.

SLATER and HAASE, JJ., concur.